Very well, Mr. Meshbesher, we'll hear from you first. May it please the Court, my name is Steve Meshbesher, I'm here on behalf of Byron Smith. The issue is, simply, whether the Minnesota Supreme Court's decision is contrary to clearly established federal law. Kind of simple. There are two U.S. Supreme Court decisions that I was going to talk about today, Waller and Presley. They make it very clear on what we're supposed to do. Waller has a test. The test clearly was not performed in this case. In fact, by coincidence, Justice Strauss, who was on the state Supreme Court at the time, concedes Waller was not adhered to. That Waller is controlling law, but then he came up with an interesting scenario about triviality or administrative. But the interesting thing about that is, when you read Waller and when you read Presley, they don't care. They don't use triviality. The U.S. Supreme Court has made it very clear triviality is immaterial. But administrative is in Waller. The term administrative, routine evidentiary rulings, matters traditionally addressed during private bench conferences. Does this qualify in your case? No. Tell me why, because it was explaining a ruling. The explanation in Presley, in the new rule, the test is in Waller. The explanation is in Presley. And the test is, it doesn't matter about administrative or triviality. What matters is who testifies, not how long it is, not where it is. This is the fifth day of trial. And the surprise in this case, because I tried the case, on the fifth day of trial, all of a sudden, without any notice, the trial judge said, we're going to close the courtroom doors. And I was surprised by that, because I was not prepared for it. And I told the judge, as nicely as I could, I don't think you can do that. I think this is a public facility. This is not your home, judge. And you can't just close the courtroom door, or at least you've got to give me some notice of it. And you've got to notify the press. The people outside the courtroom was hugely populated by the media and family. And the courtroom was so packed with people, they were giving tickets away for people who wanted to come into the courtroom and watch the trial, because they didn't have room for everybody. And everybody from TV to radio to newspapers were there. This is a public forum. And this should have been a public trial. And what he did didn't make any sense. In Judge Tunheim's order, he says he's confused. And he thought it was done backwards. It doesn't make any sense. Now, I know Judge Tunheim is not an appellate judge. And I know that his rule and explanation might not matter to you three. But I just found that interesting, that he was confused by the state Supreme Court in how he was confused by Judge Anderson, and how he thought it was just backwards. It didn't make any sense. Now the interesting thing is the U.S. Supreme Court. I'm here to argue for the U.S. Supreme Court. That's very rare for criminal defense lawyers to do, for me to be here and talk about the U.S. Supreme Court laws. Now that they have come down with Presley, the decision is clear. Presley only adheres to Waller. Waller just sets out the test. Strauss says in the Supreme Court of the state of Minnesota that if we were to apply Waller, it would fail. He uses the word failure. But what we've got is not just Waller. We have Presley. Presley is the most recent case. And they adhere, the U.S. Supreme Court adheres to Waller. And if we're going to follow the U.S. Supreme Court, this case demands the writ be granted. Now what Mr. Smith does with that writ is up to him. Now the process, as you all know, is that the writ is granted. There's a 90-day gap. I'm sure the county attorney who asked for outside counsel can re-prosecute the case and he'd have a new trial. It's not like he's getting something for free. There were some words that were bothering me when I read Judge Tonheim's order. He's not supposed to get something for nothing. That's not what this is about. Nobody's getting something for nothing. If anything, what he would get is a new trial. And that doesn't necessarily mean that we know what the outcome of the new trial would be. It's going to be another jury and they would have to make that decision. That doesn't necessarily give him a guarantee as to the outcome. I don't know that. None of us know that. But what he had in the courtroom is an unfair, federally mandated issue that came up. Then what Judge Anderson did to compound it is he said, well, you can't bring in the previous burglaries through the two victims. You can do that through examination of the police. But there are two other witnesses who participated in the burglaries, Cody Casper and Jesse Creasel. Now, we had done a writ to bring Jesse Creasel in from prison. Cody Casper was out of prison. We had him under subpoena. He participated in the two burglaries. And we were going to ask him questions about the two burglaries because that went directly to the state of mind to Mr. Smith. That doesn't really adhere to anything I have to argue today. I'm just throwing that out for your consideration so you understand where I'm coming from. This is about a public trial. This is about the Sixth Amendment. The media, interestingly enough, did a friend of the court brief, hired their own attorney about First Amendment violation. Now, I'm not here on behalf of the media, but the- Was that in the Minnesota Supreme Court? Yes. That brief could proceed. And the attorney representing the, I think the Styron Tribune, wrote a friend of the court brief. And what they've been saying in the appellate level is that whether it's a First Amendment or Sixth Amendment, they're the same for analysis. For your appellate analysis, it's the same thing. One is equal to the other. The analysis also goes into, it doesn't matter whether it's voir dire or if it's an omnibus hearing, whether it's sentencing, you've got to leave those courtroom doors open. Now, the irony is after this trial, Justice Gildaya, Chief Judge of the State Supreme Court, went to the Minnesota Bar Association on June 26, 2014. And she said, one of our solemn obligations is to ensure that Minnesota courts remain open and accessible to all. Upholding this commitment is central to the judicial branch and guides to every step. And it's just coincidental that she said that after this trial. Was she in the majority or dissent? There was no dissent. It was a unanimous decision. But she said that- I'm sorry, I thought, was she on the State versus Smith Minnesota Supreme Court? Yes. OK, where was she on the vote? There was no dissent. There was no dissent. It was unanimous. I'm sorry, did she join the concurrence? Yes. OK. But the fact- No, she didn't. There was no joining in the concurrence. She joined the opinion of the courts. She joined with everybody else. Was Judge Strauss, Justice Strauss by himself? Well, they all wrote their own. This was a very lengthy opinion. And they all wrote different things. And Strauss said that- They didn't all write their own separate opinion. There was an opinion of the court. And there was a separate concurrence. And Justice Strauss said- He's alone in that opinion, right? Yes. And he took- That's all I was asking. What about the Norris case from the Fifth Circuit? You familiar with that? Yes, I am. Do you think that's also contrary to Supreme Court precedent? I do. So we would have to adopt that view? I think now- The Minnesota court relied on the Fifth Circuit and said that- I think it no longer applies. Now that Waller has been substantiated by a newer case at the U.S. Supreme Court, the other circuits don't apply. We have to apply to the U.S. Supreme Court what they say the rule is. And the rule is it doesn't matter how- where in the trial it is or how long it is or whether- You don't categorize something as administrative. Now it's who the witness is. Where does Presley and Waller say that no part of the trial or all parts of the trial proceeding must be- There is a reference on page four where appellant's position on appeal in seeking the writ does not hinge on- well, I talk about the dicta on page- in that one- How far does this rule go in your view? Does it apply to- if this discussion had been held in chambers, would it have violated the Sixth Amendment? Yes. It does for Vordeer. It does for sentencing. We know that. We know Vordeer sentencing suppression hearings. Yeah. But what case says that the judge can't have the lawyers in chambers before a court begins and have a discussion of the issues that- There is no case that says that. And that's one recognition that Judge Tonheim made, that one of the problems we have is the scarcity of U.S. Supreme Court decisions on a public trial. And the second thing that he raised, and I think he's right, is the abundance of U.S. Supreme Court decisions on the Anti-Terrorism and Death Penalty Act, but nothing on this directly. But we talk about- he talks about administrative. He talks about whether or not it's trivial, but the courts say, or the U.S. Supreme Court says, that isn't the test. It's who the witness is. When you have two witnesses who participated in burglaries at Mr. Smith's home, two witnesses that Mr. Smith thought they were his friends, and he hired them to rake his lawn and mow his lawn, and all of a sudden, unbeknownst to him, they're breaking into his home with the main person, Mr. Brady, who is deceased. He was surprised by the traitorship of it and being stabbed in the back. The fact that he didn't know their name is irrelevant. It goes to his state of fear and legitimizes his fear in his defense of self-defense. He was- they broke into his home by smashing a window, climbing through the smashed window, and then confronting him in his basement. They didn't have to go down the stairway to confront him in the basement, but they chose to. And all that goes to is whether or not he intended this. He had every right in his own home to protect himself under the Castle Doctrine. Now, even if you don't agree with me on that, a jury needs to hear it. The public needs to be allowed to see it and hear it, and the media does. Now, exactly what was the public deprived of hearing? Two names? Cody Casper and Jesse Creasel. Jesse Creasel and Cody Casper participated in previous burglaries of my client's home with the victim. All right, your time has expired. Thank you for your argument. Thank you, Your Honor. Mr. Wartner, we'll hear from you. Thank you. May it please the court, my name is Brent Wartner, and I represent Michelle Smith, warden, Minnesota Correctional Facility, Oak Park Heights. I don't intend to go into the facts of this case unless the court has questions. Counsel did bring up facts that are not challenged before this court in his petition. I'll rely on the Minnesota Supreme Court decision and their fact finding, since it's not a matter before this court. Other than to say, we are asking this court to affirm the district court's denial of Mr. Smith's habeas corpus petition. We have three points to make with regards to this fact. First, and most importantly, appellant's request is an attempt to expand the public trial right beyond Supreme Court precedent. And such a request fails under the deferential treatment of the AADPA. Second, appellant's request to expand this public trial right is in the wrong posture for this case. He's asking this court to expand that right. That should be brought under a direct review of the matter and not under the deferential standard of AADPA. And finally, even if the deferential standard of the AADPA did not apply in this case, the Minnesota Supreme Court ruling that a non-public proceeding was administrative in nature and did not constitute a closure implicating the Sixth The Minnesota Supreme Court decision upholding Byron Smith's conviction for first degree murder of Nicholas Brady and Haley Kiefer and subsequent life sentence in Minnesota State Prison was neither contrary to or an unreasonable application of clearly established federal law as determined by the US Supreme Court. Appellant's claim before this court  precedent with a high level of generality in order to bypass the deferential standard of review required under the AADPA. If this court adopts appellant's position, the effect would be to substantially weaken the level of deference by the AADPA. And such an outcome would be contrary to the standards established by Congress, the Supreme Court law, and Eighth Circuit precedent. The AADPA requirement is difficult to meet and is intended to be a high standard, a gatekeeper. The standard reflects the view that habeas corpus is a guard against extreme malfunctions and not merely error correction. It promotes comity between state and federal courts and provides finality in all but the most egregious constitutional violation cases. This case before the court does not meet this high threshold. Appellant admits this case is factually distinct from clearly established Supreme Court law, but still he seeks reversal. He argues that the Minnesota Supreme Court applied an incorrect legal rule to Smith's claim. He says all portions of an accused trial are subject to Sixth Amendment public trial right. In other words, he makes a claim that it's absolute, that this is an absolute rule. But Supreme Court precedent says we look to holdings and not dicta when a case is under the AADPA. Under the AADPA, the more general the rule, the more leeway there is for the state courts. But what actually is the rule that's before this court here today? The rule, as laid out, is proof at trial. And in addition, Supreme Court precedent Waller and Presley both talk about suppression hearings and voir dire. Importantly, both those cases were direct reviews. They weren't subject to the high deferential standard of the AADPA. I've been assuming the whole case, I'll ask you. I assume cert was not sought in State versus Smith Minnesota Supreme Court case?  Thank you. Proceed. The Minnesota rule that they came up with after looking at their own precedent, because there was a dearth of Supreme Court precedent on the particular issue, was non-public administrative proceedings do not implicate Sixth Amendment right to public trial. This rule is not contrary to clearly established law or an unreasonable application. And therefore, appellant's claim fails. Non-public hearings or administrative matters is an issue never decided by the Supreme Court. But this court did go in that direction. And I would find informative for this court the decision of US v. Thompson. What's important about this case is that it was 2013 when it was decided. So it was after both Waller and Presley. And significantly, it wasn't under the AADPA. But the court found that there was a public trial right attached to sentencing. When it made that determination, it didn't rely directly on Waller or on Presley. This court made that determination after looking at all the factors that went into those decisions, but stated there is no Supreme Court precedent on the issue of attaching a public trial right to sentencing. If that's what case are you quoting there? United States v. Thompson. All right. Thank you. And I would. 2013 case. Yeah, it's in your brief. Yes. And in that case, this court said, reading Waller, reading Presley, we don't know if it applies because the precedent isn't on point. And this was in a non-AADPA case. But this court found that, in fact, sentencing does have a public trial right. But it shatters the idea that the rule was absolute under the Supreme Court precedent. Further, this court went further in that case and looked and decided that, even though a public trial right attached at a sentencing hearing and it wasn't found in the Supreme Court, it decided that the Waller factors didn't apply to a partial closure. Again, this court looked at Supreme Court precedent, could not find it on point with regards to a partial closure, and therefore decided that the Waller factors didn't apply. Again, Waller is not absolute. But you agree this is a complete closure, right? This is a full closure case? This is a physical closure of the courtroom. Yeah, full. Not partial, right? But there's no, yes. Yeah, yes, I do. But when you look at that decision and you compare it to the Supreme Court precedent and the highly deferential standard of the ADPA, it's clear that there is no absolute rule that the Minnesota Supreme Court, under the deferential standard, is able to go ahead and look at its own precedent to decide whether to extend the Sixth Amendment public trial right to non-public administrative hearings. And looking at this court's precedent, there's support for that in terms of the ADPA bar. When you look at the Garcia v. Birch case from 2006, admittedly prior to the Presley decision in 2010, it looked at the North Dakota decision on a partial closure and decided that even though this court might disagree with the outcome, it recognized the high standard of the ADPA and affirmed that the North Dakota ruling that partial closure was not required to be public in that case. So similar to these two cases, the US Supreme Court has not spoken on whether Sixth Amendment applies to non-public administrative hearings. Both Waller and Presley are distinguishable, and thus habeas relief is not available to appellant. So how do you characterize the nature of this closed hearing? Was it administrative, strictly? Yes, the hearing that we were talking about, the Minnesota Supreme Court found that it was an administrative hearing and compared it to a bench conference or a discussion outside the courtroom. What did it deprive the public or the press of in terms of the knowledge? The names of two people? No, the Minnesota Supreme Court clearly found in the record that those names of those two people were not denied to the public. They were in a written, they were in a full hearing that happened days before this proceeding. The court ultimately issued a written order. Those names were public. Those names were out there. This was a discussion about opening statement and whether or not other facts could be brought in. It was a clarification of what the court's ruling was going to be. You are not to consider the merits of the state trial court's ruling. Some might say it was inexplicable, but that's not for us to decide? Correct. The facts that this court should be adopting are in the Minnesota Supreme Court decision. Thank you. Did you just refer to a North Dakota? I referred to Garcia v. Bursch. I believe that was a North Dakota. I believe that was an Eighth Circuit review of a North Dakota Supreme Court decision. They found there was no public trial violation in a partial closure case. And it was a 2006. Yeah, I'm familiar with Garcia. The North Dakota decision is the underlying opinion that you're talking about in that Eighth Circuit case. Got it. If there were no further questions from this court, I will yield my time. Very well. Thank you for your argument. Thank you. I think Mr. Meshbacher used all of his time in the opening segment. I think you've used all of your time. Well, you have something you want to add? Well, we'll give you one minute in rebuttal if you'd like to. I'll just end on this, Your Honor. I'll just end on this dicta on page four of my reply brief. Stating William v. Taylor, if you look on page four of my reply, under the government's argument, any number of public trial violations would evade habeas relief. A state trial court could close the courtroom during the testimony of a chief complaining witness. A state appellate court might call the closure trivial or administrative. And a federal reviewing court would be left helpless to remedy the violation, since neither Brawler nor Presley involved witness testimony during the prosecutor's case in chief. And the court said, but that can't be right. Thank you. Thank you.